[No. 17962.  *En Banc.*  July, 17, 1924.]

FRANKIE G. CAHILL *et al., Appellants,* v. EMORY D.
McCOWN *et al., Respondents.*[1]

PLEDGES (1, 4)—PROPERTY SUBJECT — CONSTRUCTION — EVIDENCE.
There was a valid pledge of a crop on premises sold, and mutual
provisions which either party could enforce, where the vendee
agreed to plant a crop, the title to which should remain in the
vendor as a pledge for security for part of the purchase price, and
the vendor agreed to apply it thereon.

Appeal from a judgment of the superior court for
Walla Walla county, Mills, J., entered January 27,
1923, dismissing an action on contract, upon sustain-
ing a demurrer to the complaint. Reversed.

*Gose & Crowe* and *Roy R. Cahill,* for appellants.

*Sharpstein, Smith & Sharpstein* and *S. H. Cutting,*
for respondents.

HOLCOMB, J.—A demurrer having been sustained to
the amended complaint herein, appellants declined to
plead further, and the action was dismissed with preju-
dice.  The demurrer was upon three grounds: first,
defect of parties plaintiff; second, that several causes
of action were improperly united; and third, that the
amended complaint did not state facts sufficient to
constitute a cause of action.

The amended complaint demanded an accounting as
to the quantity and proceeds of a part of the crop of
wheat, and judgment for the balance of the proceeds
which had not, prior to the commencement of the ac-
tion, been paid to appellants, though often demanded.

The complaint was, in substance, as follows:

On May 25, 1920, appellants contracted to sell to
respondents a tract of land for the agreed purchase

[1] Reported in 227 Pac. 502.

price of $34,000. At the time the contract was executed, appellants owed one T. C. Elliott $8,000, evidenced by a promissory note secured by a mortgage upon the land. By the terms of the contract, the payments were to be made as follows:

"The sum of $2,000 in cash on the delivery of this contract, the receipt of which is hereby acknowledged, and the sum of $8,000 according to the tenor of one certain promissory note made by the said first parties to T. C. Elliott, due and payable Dec. 1st, 1921, together with the interest thereon at the rate of 6% per annum. The payment of interest on said note by said second parties to begin June 1st, 1920, and is payable on Dec. 1st, in each year, and the balance of $24,000 to be paid on or before six years from date; the said installments of $24,000 to bear interest from Oct. 1st, 1920, at the rate of 7% per annum, payable Oct. 1st of each year, and the said parties of the second part hereby agree that they will pay all taxes and assessments levied on the said lands subsequent to 1919, before the same shall become delinquent."

There was a further provision that respondents should plow and cultivate the real estate in the summer of 1920, and seed the same to wheat in the fall of that year, and harvest the crop thereon in the year 1921.

It was then further provided:

"It being understood and agreed between the parties hereto that title and ownership of said crop shall remain in the said first parties as a pledge for the payment of the interest due Dec. 1st, 1920, on the said $8,000 mortgage to T. C. Elliott, also the payment of the said sum of $8,000 Dec. 1st, 1921, and interest due on said note at maturity; also for the payment of the interest due on any sum remaining unpaid on said installment of $24,000."

The contract also provided that, if the payments should be made as required by the contract, and re-

spondents should plow and cultivate the land as therein provided, and should sow and harvest the crop as agreed, and "apply the proceeds as herein agreed" and make the further payments of principal and interest as specified in the contract, then good and sufficient warranty deed should be executed, conveying title.

Respondents were let into possession of the land, plowed and seeded the same to wheat, and harvested and disposed of the crop in 1921. Out of the proceeds of the same, $2,400 was paid over to appellants, and the balance of the proceeds, which it is alleged exceeded $2,350, respondents refused, after demand, to pay over. The amount paid over satisfied everything up to the date of the payment which respondents were required to make, except the principal of the $8,000 indebtedness to T. C. Elliott.

T. C. Elliott was not made a party to the action. It will be noted that respondents were to pay $8,000 according to the "tenor of one certain promissory note made by the said first parties to T. C. Elliott, due and payable on Dec. 1st, 1921, together with interest thereon at the rate of 6% per annum." The written contract is incorporated in the complaint as "Exhibit A."

Respondents contend, with which His Honor agreed, that, if respondents were required to account for the portion of the crop harvested in 1921 not accounted for, there was no assurance that the funds thus received by appellants would be applied in accordance with the terms and conditions of the written contract set forth in the complaint. They also contended, and were sustained by the trial court, that there was no element of a pledge by the reservation of the crop of 1921, although the contract contained the words that

the title to the crop of 1921 should remain in the appellants "as a pledge for the payment of the interest due Dec. 1st, 1920, and the $8,000 to T. C. Elliott, due Dec. 1st, 1921, and the interest due thereon."

While, of course, the retention of the title in the vendors in the manner herein would not strictly fall within the definitions of a technical pledge, nevertheless, the retention of the title to the crops was for the further security of the payment of the amount of the debt to Elliott, for which appellants are primarily liable. If, as intimated, appellants should not pay over the amount of the proceeds of the crop towards the satisfaction of the debt to Elliott, nevertheless, respondents, having performed their contract as they agreed in writing to do, would be entitled to credit for the amount, and to specific performance of the contract when the provisions were performed in full. They agreed in writing that the title to the crop harvested in 1921 should be and remain in appellants, and appellants in effect agreed that it should be applied to the payment of the Elliott debt and mortgage. These were mutual provisions which either could enforce against the other.

There is, therefore, no doubt that appellants had the right to have the entire proceeds of the crop harvested in 1921 paid over to them. That was a part of the bargain of sale.

The judgment is therefore reversed and remanded with instructions to overrule the demurrer, and for further proceedings.

TOLMAN, FULLERTON, PARKER, BRIDGES, MACKINTOSH, PEMBERTON, and MITCHELL, JJ., concur.